Thank you Deputy. Please be seated. Good morning ladies and gentlemen. I do welcome you to the Illinois Appellate Court. I would like to tell you we have two cases on the call for today. When your case is called, I would like the lawyers to come up and identify themselves on the record and then we'll begin with your arguments. You'll have 15 minutes to argue. If you want to save 5 minutes for rebuttal, if the appellate wants to do that, feel free to let us know about that as well. So when the case is called, again, please step up, state your name very clearly for the record and we'll proceed. Madam Clerk? 12-22-13, Dana D. v. Pollen. Your Honor, Alan Wohl with the 8-0-0 on behalf of the appellate petitioner, Dana D.  Michael Tristano, T-R-I-S-T-A-N-O, on behalf of Paul Day and Michael Vines. All right, spelling on the other gentleman's name? Kevin. You see, was there another? He is Victor, Your Honor. He is Victor, I-V-E-N-S. Thank you, Mr. Vines. All right, gentlemen, thank you. And is the appellate ready to proceed? Your Honor, I would like to reserve 5 minutes of my 15-minute time for any rebuttal that might be necessary. Fine, counsel, thank you. May I proceed? You may. May it please the Court, and good morning, Your Honors. Again, my name is Alan Wohl. I represent the appellate in this matter, Dana D. Your Honors, on April 3, 2012, the trial court entered a judgment for dissolution of marriage in this matter that included an award to the appellee, Paul Day, of $1,600 monthly in permanent maintenance. Your Honors, in the April 3, 2012 order, the trial court made a number of findings, including that the appellee had an adjusted gross income for the year 2010 in the amount of $20,685. I'll ask you a preliminary question. As far as the receipt of Social Security money or Social Security disability or any kind of money that comes along those lines, is that to be considered or not? Your Honor, I appreciate that question because it really gets right to the heart of my argument. It is the appellant's contention that the trial court, in arriving at the figure of $20,685, included the appellee's taxable Social Security disability payments, which came for the year 2010 to the amount of $2,647. However, Your Honor, the Illinois case law that applies to the issue of Social Security disability benefits payments and the establishment of maintenance clearly indicates that it is Social Security benefit payments that are to be considered by the trial court when it is making its maintenance award, not the social, the taxable Social Security benefits. Counsel, there's no distinction between Social Security and Social Security disability. Your Honor, it's the disability benefits that are at issue here, and it is the appellant's contention that the mistake of law that was made in this matter is that the trial court only considered the amount that represented the taxable Social Security benefits, as opposed to the full amount of the Social Security disability benefits that Mr. Day received in 2010. The reason this is important, Your Honor, is that the total Social Security disability benefits received by Mr. Day in 2010 amounted to $24,510. If you use that figure, which is required by Illinois case law, and add that figure to the other income that Mr. Day received in 2010, you then get a gross adjusted income amount of $42,000 for the year 2010. In other words, that properly calculated figure would be more than double the amount that represents the trial court's finding in its dissolution order, and the appellant submits had the proper income for 2010 been calculated, then the maintenance award of $1,600 per month, it would have been much lower than that. Counsel, what's your name again? Mr. Wall. Isn't the real question, how much money does Mr. Day have available to meet his needs, whether it's from tax exempt sources or from taxable sources or from pensions or wherever it comes from? Isn't that the real issue? Your Honor, it is the real issue, and I think in that regard, if you look at what the trial court found as Mr. Day's monthly, you know, income needs, the court fixed that amount at $3,800 a month. If you take Mr. Day's income... My question is a little different. I'm sorry. I'm asking, does it matter where the money comes from as long as it's ascertained that this is money that's available to Mr. Day every month, this is what comes in, this is how much money is available to him to meet his needs? Does it matter whether it's taxable or it's not taxable? Well, it does matter, Your Honor, in that the amount that is available to Mr. Day at the rate of $1,600 per month gives him a total monthly income that is in foreign excess of the needs that he has on a monthly basis. I know that's your argument, but my question... I'm sorry, and if I'm not responsive... No, you're not answering my question. I apologize. You're making your argument, and I understand that because that's why you're here. But, you know, spending a lot of time on the distinction between whether it's taxable or not taxable, I am just trying to distill your argument to what is it that Mr. Day has available in terms of income, net income that comes to him every month, and what is his expenses, and whether the amount of money that's coming in can meet those expenses. That's all I'm asking. If we put aside the maintenance award, the amount that he has coming in per month is net. Based on his 2010 disclosure statement, it is a net of approximately $3,400. That consists of a Social Security disability benefit payment that at the time was, I believe, $1,950 and a $1,500 amount that came from other assets that Mr. Day had. So prior to any maintenance being provided, the records in the case indicate that he had monthly income of $3,400. He had, according to the court, monthly needs that totaled $3,800. So there is a $400 gap between what he was receiving in monthly income, bracketing maintenance, and what the court set as his monthly needs to be. So there is a $400 gap there, and if you then include, Your Honor, a $1,600 per month maintenance payment, then Mr. Day's monthly income is now at about $5,000 with monthly needs set by the court at $3,800. Counsel, can I ask you, the fidelity investment income, which is about $18,000 for 2010, is that right? That, according to the records, that was not income that Mr. Day received in 2010. That was in 2009, and that, Your Honor, is why his income figure for 2009 is shown at about $53,000 as opposed to the income that the court found for 2010 of, again, the $20,000, approximately $20,700. Okay, so that was 09? That was 09, where you had the fidelity investment income. And that was not something the court considered in coming to the determination? Well, Your Honor, in making its findings, it specifically indicated a 2010, again, a 2010 income that I've stated to the court. Okay, all right. Counsel, what about the standard of review here? Yes. What is the standard review? The standard of review here, Your Honor, is abuse of discretion. So, what we'd have to find is that, clearly against logic, the question is not whether or not we agree with the trial court, but whether the trial court acted arbitrarily. Is that right? That is correct, Your Honor. And my contention in this matter is that because there was a mistake of law that was committed by the trial court, this court can reverse the maintenance award and remand it back to the trial court on abuse of discretion because of the mistake of law that I believe was committed in arriving at the income calculation that I believe was the basis for the trial court's award of $1,600 per month in maintenance. Why is it a mistake of law and not a fact? Well, I think it's a mistake of law, Your Honor, again, because of this important distinction between Social Security disability benefits and the taxable portion of Social Security disability benefits. And the trial court, as I look at the record, calculated the 2010 income using just the taxable portion of Mr. Day's Social Security benefits, whereas the case law in this matter discusses Social Security disability benefits themselves as being what should be considered in awarding maintenance. The cases do not talk about taxable Social Security disability benefit. And that, Your Honor, is the mistake of law that allows this matter to be reversed on abuse of discretion. Counsel, you want to finish up? I can stop right here, Your Honor. Thank you, sir. Thank you so much, Your Honors. Mr. Tristano? May it please the Court. In essence, Deanna Day asked the court... What's your name again, counsel? Michael Tristano, T-R-I-S-T-A-N-O. In essence, Deanna Day asked the court... The question she asked the court is the trial's award of permanent maintenance to fall in the amount of $1,600 per month on abuse of discretion, and that it failed to consider his income, the Social Security disability benefits that he receives every month, and that he disclosed in his local 13.3 disclosure statement that he filed in the circuit court of Cook County and listed his income on his federal income tax returns. Let's briefly look at the record, as argued by Mrs. Day. Call your attention to Exhibit H of her initial brief. She alleges that Paul had a gross income of $42,510. Throughout her argument, as well as today in front of this court, Mrs. Day has failed to adequately differentiate between ongoing Social Security benefits, which is repeatedly listed by both parties as $1,946 a month, which the court was aware that he was receiving $1,900, the trial court was aware he was receiving $1,946 per month, and withdrawal from Mr. Day's retirement savings. The court found specifically that he wasn't required to exhaust his savings in order to meet his ongoing expenses. Counsel, focusing on 2000. I'm sorry, go ahead. At what point, then, does the retirement savings kick in? Because that's what it's for, is for retirement. And these, this couple is, let's say, middle-aged, okay? At some point, the retirement is going to have to kick in and be depleted, in fairness to the wife, isn't it? Do you notice how every year middle-age moves up and up? I think so. Good question. Let's fast forward 11 years. Paul's 67, Deanna Day's 66. She retires. She has no income to pay maintenance. This is always modifiable, as we know. So she comes in and modifies maintenance, saying, Judge, I don't have the income, which is legitimate. The court can't force her to work until 94. At age 66, she's paying no maintenance. Paul has to support himself thereafter. He will have his Social Security. Deanna, Deanna. That's not what the judge did, though. The judge made this a lifetime award. I understand it's modifiable, but there's a lot of bells and whistles and hoops she had to jump through at that point. The judge specifically said this was basically for life, and she, in fact, said that the wife had to take out a life insurance policy to guarantee the payments if she were to pre-decease the husband, didn't she? That's what the trial court ruled. However, if, in fact, we have two, there are two very clearly foreseeable possibilities. Number one, Mrs. Day dies. That could happen. And at that point, there'd be no further maintenance. Mrs. Day becomes disabled. There'd be no further maintenance. Mrs. Day loses her earning capacity. No further maintenance. That, at normal retirement age, at 66, 67 for Mr. Day, he still has statistically, and you can take note of life expectancy tables, another 17 years to live. They would have him exhaust 11 and a half years of his savings, and they, I think counsel, I'm sure not intentionally, stated that he was taking out earnings from his account. These weren't earnings. These were principal deductions. The account, with today's interest rates, earns very little, even though it's well over $200,000. That account was split 50-50. So Mrs. Day has exactly the same amount of retirement savings now, plus another 10 or 11 years to earn more, turn a better social security. So at normal retirement age, 66 for Mrs. Day, 67. Mr. Tristano, in terms of the gross amount of retirement assets that the parties had, the trial court awarded the majority of them to your client, didn't she? He did get, he has larger retirement assets than Mrs. Day. That's because some of them were free marital. That's true. But there was no discount made in terms of the part of the retirement benefit that was marital. So in summary, he got the larger portion of the totality of the retirement benefits that the parties had. Is that true or not true? Yes or no? That's true. Yes or no? I mean, yes, it's true. Now, Mary, that includes non-marital retirement benefits. I understand. Which the court had no authority to divide. I understand that as well. Another question for you. What about Mrs. Day's argument that the $1,600 a month maintenance really forces her to expend more than she is actually taking in each month? And I think you made an argument that she could borrow money or they could, I mean, what about that argument? Is that something that you think is an abuse of discretion? No. I mean, do you think it's okay for the trial court to order her to pay out more money each month than her disclosure statement shows she's taking in? Do you think that's okay? When that disclosure statement is accurate, yes. I think it's okay for the trial court. And where would she get the additional money? Well, she would file taxes at the end of the year and claim her standard deduction. But you don't know that, sir. That's speculative. Where would she, just in the context of what I have before me in the record, where would she get the additional money to close that gap? She has the additional money. Her statement, if you look at her 13.3, she claims zero exemptions. She doesn't take any credit for a mortgage deduction. She overstates her expenses. If we look at the expenses set forth under 13. The trial court accepted the disclosure statements of both parties. So I don't think we're going to re- we're certainly not going to re-litigate that here. But my question was much more specific. Where would, within the context of what's before us in the record, where would the additional money come from for her to close the gap between what she actually shows in the record she gets in each month and what she has to pay out? Where would that money come from? It would come from filing and taking her tax exemptions to which she's entitled. You say that it's speculative, but it's not. She's taken those exemptions every year she's filed taxes. To say that tomorrow I'm not going to accept my paycheck, therefore you can't award maintenance because it's speculative as to whether I'm going to take it or not, is not a logical inference from what is happening. Let me ask you another question. What about the question that the number the trial court found that Mr. Day needs for his monthly expenses? It's $3,800. $3,405. And when he gets the $1,600, that puts it way above that. Why such a large additional amount? Well, the $1,600 would put it at $150 over the minimum. No, no, sir. Well, the $1,600 and $2,000. Mr. McDonnell, please. An additional $1,600 a month with $3,400 is not $150. Okay. That is if you accept that he has to exhaust his retirement savings. I'm just asking a very narrow question. What is the reason for ordering $1,600 a month additional $1,600 a month maintenance when the court identifies that Mr. Day's monthly expenses are $3,400. He gets in $3,400 a month. No, it's not. His monthly expenses are $3,405. So if he has the additional $1,600, that puts him way above that. It comes up to about $5,000. What's the difference? What's the reason for such a large additional amount? The trial court held appropriately that he's not required to take the $1,500 out of retirement savings. This is Justice Delaware's question and consideration. It's established law. You don't have to exhaust your savings in order to not allow. But the gap that he would need, he would only need an additional $395 instead of he's getting an additional $1,600. Why so much more is my question. Because his income, income is $2,000 a month, 1946 for Social Security. That's his income. The difference between that income and his expenses, according to the court, not including debt service, which the court distinguishes further on, the trial court, is $1,450. So by that logic, we don't count any of the other money that's available to him. We're not, that's not to be considered. And that's, that's your argument is that the court rightly did not consider any of the other money that he has access to, such as his retirement plans and so on. That's not to be considered just the Social Security disability payment. Is that correct? That's my argument and the law. Okay. I know that since Mrs. Day, Ms. Day, has the same amount of money, she has access to that income too. So if she's saying, where's the double standard? Paul has to exhaust his funds. I don't have to touch any of mine. They can continue to earn as I earn. The straightforward comparison, you have a lady who makes $83,000 per year. Paul Day makes $24,000 through Social Security. No other income. That's in her exhibits, that's admitted, that was found by the trial court. So a $24,000 a year disabled person with multiple sclerosis and depression is required to exhaust every penny he has. I have one last question. The same question I asked your opponent. Isn't the real question, how much money does he have available to meet his needs on a monthly basis? Not whether it's tax exempt or it came from retirement savings or wherever it came from. How much money does he have available each month to meet his living needs? Isn't that the real question? No. Oh, that's not the question. Okay. No. The real question is how much income. We've always felt, I mean, it's black-letter law. You're not required to exhaust your savings. What happens when Mrs. Day, if unfortunately Mrs. Day died tomorrow or died, let's say, at age 67? Paul would have exhausted his entire, most of his entire retirement savings under Mrs. Day's argument and have nothing to live on except Social Security. And the county, the state, the federal government would be supporting him. Counsel, let me ask you a quick question here. Can you address your opponent's argument relative to the mistake of law he alleges that the court made relative to the taxable versus non-taxable income? I think it's very clear that the court considered the $2,000 a month and didn't even impute any tax income. If you look at the affidavits that were filed, Mr. Day showed $41 a month in taxes. He didn't have enough money not to declare zero exemptions and bank the money so he could get it back at the end of the year. He needed to live. And the court repeatedly, as I cite, has said that he was making $19.46. Number two, I think there's a mistake of law as recited by counsel. IRS Publication 915 says, and clearly it's a very straightforward paragraph, that 50% of Mr. Day's federal Social Security will be taxed because he makes more. With the award of maintenance or with the withdrawal of the exhaustion of his savings, he makes more than $3,400 per year. He's taxable. And if he pulls, I'm sorry, if he pulls more than $3,400, it's 85% taxable. Right now he's in a taxable 50% are going to be taxed anyway. Counsel, thank you. Any further questions? Thank you very much, sir. Five minutes, counsel? Mr. Wall? All right, gentlemen, thank you very much for your presentation here today.